RECEIVED
IN LAKE CHARLES, LA

MAY 2 8 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

MARTCO LIMITED PARTNERSHIP     :     **DOCKET NO. 2:07 CV 2002**

VS.     :     **JUDGE MINALDI**

BRUKS-KLOCKNER, INC.     :     **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Presently before the court is a Motion to Dismiss [doc. 62] filed by the third-party defendant, Mid-South Engineering Company ("Mid-South"). Mid-South seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of the third-party complaint against it filed by the third-party plaintiff, Bruks, Inc. (f/k/a Bruks-Klockner, Inc.)("Bruks"). Bruks filed an Opposition [doc. 66] and Mid-South filed a Reply [doc. 67].

### Rule12(b)(6) Standard

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). To avoid dismissal under a Rule 12(b)(6) motion, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Id.* at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)..." *Id.* at 1965.

Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

### Facts

The original plaintiff, Martco Limited Partnership ("Martco"), contracted with the original defendant, Bruks, for the purchase of tabulator belt conveyors ("Conveyors") and other associated materials for its Oakdale OSB Plant in Oakdale, Louisiana (the "Project"). Martco separately contracted with third-party defendant Mid-South for engineering services associated with the Project. Mid-South's services were thereafter performed for Martco pursuant to Mid-South's contract with Martco.

After suffering alleged numerous and continuous problems with the Conveyers supplied and installed by Bruks, on October 26, 2007, Martco instituted suit against Bruks in the 33rd Judicial District Court for the Parish of Allen (Suit No. C-2007-509, entitled *Martco Limited Partnership v. Bruks-Klöckner, Inc.*), alleging causes of action in redhibition, breach of contract, detrimental reliance, and negligence.

On November 20, 2007, Bruks removed the dispute to this court. Almost a year after Martco filed the captioned suit against Bruks, on September 23, 2008, Bruks filed the Third-Party Complaint against Mid-South. In its Third-Party Complaint, Bruks alleges that "Martco contracted with Mid-South for Mid-South to provide and develop designs, specifications and other information" related to the equipment supplied for the Project and that, "if Bruks is somehow found liable to Martco in this case, . . . a judgment [should] be entered against Mid-South, ordering Mid-South to contribute

2

to and/or indemnify Bruks for all or part of any amounts awarded to Martco."[1]  Bruks alleges that Mid-South "failed to provide Bruks with the necessary information in a timely manner which caused any delay in the delivery of the Equipment" and that "[i]f the Equipment was defective and/or did not perform properly (which is denied), such was due in whole or in part to Mid-South providing the wrong specifications and information."[2]

Law and Analysis

Mid-South asserts that following the 1996 amendments to Louisiana Civil Code Articles 2323 and 2324 regarding comparative fault and solidary liability, both federal and state courts in Louisiana have recognized that third-party claims seeking noncontractual tort contribution and indemnity are no longer proper or permissible. Mid-South argues that the third-party Complaint filed against Mid-South by Bruks is precisely the form of action now prohibited by Louisiana law and should, therefore, be dismissed.

Bruks asserts that Martco initiated this case by suing only Bruks under the theories of, among others, breach of contract, redhibition and negligence. Specifically, the complaint alleges that Bruks is liable to Martco because Bruks purportedly failed to provide timely certain equipment to Martco at the Plant, and the Equipment provided by Bruks to Martco was allegedly defective and failed to perform properly. Bruks argues that if the equipment was delivered late or was defective in any way, it was not Bruks's fault. Rather, it was Mid-South's faulty, incorrect and untimely designs that caused the alleged issues that Martco raises in its complaint.

---

[1] Third-Party Complaint ¶¶6-7.

[2] Third-Party Complaint ¶¶9-10.

3

Bruks denies any wrongdoing whatsoever and denies that it is liable to Martco for anything under any theory of law. Bruks further asserts that if Bruks is found to be liable to Martco in this case, Bruks requests that a judgment be entered against Mid-South, ordering Mid-South to indemnify Bruks for any amounts awarded to Martco. At a minimum, Bruks argues that it should be permitted to prove that it is entitled to indemnification from MidSouth and that dismissal at this early stage in the litigation would be premature and inequitable.

The law regarding comparative fault at issue here, La. C.C. art. 2323, was amended in 1979 and in 1996. It currently provides:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
>
> B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
>
> C. Notwithstanding the provisions of Paragraph A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

The article provides that the provisions of paragraph A *shall* be applied to *any* claim for recovery of damages, asserted under any law or theory of liability, regardless of the basis for liability. The Louisiana Supreme Court examined the article in *Landry v. Bellanger,* 02-1443 (La.5/20/03),

851 So.2d 943, and noted that the provisions indicate that Louisiana employs a "pure" comparative fault system.[3] Further, in examining the effect of paragraph C, the court determined that "Nothing in this section prevents the determination of the percentage of fault of all persons causing or contributing to the injury at issue. Rather, Section C provides that when plaintiff is injured as a result of the fault of an intentional tortfeasor, his negligence shall not reduce his recovery." *Id.*, 851 So.2d at 953. It concluded that the fault of all persons causing or contributing to injury, regardless of the basis of liability, is to be determined.

> The court in *Landry* addressed apportionment of the fault of intentional tortfeasors:
>
> It is appropriate to consider each party's respective fault when a matter involves intentional tortfeasors. In prohibiting the reduction of a negligent plaintiff's damages, Article 2323(C) reflects a legislative determination that on the continuum of moral culpability, the act of an intentional actor should not benefit from a reduction in the damages inflicted on a less culpable negligent actor. In the face of the silence of La. C.C. art 2323(C) regarding how to address the comparative fault of two intentional actors, we can extrapolate from paragraphs A and B of La.C.C. art 2323 that the fault of intentional actors can be compared.

*Kennedy-Fagan v. Estate of Graves*,  993 So.2d 255, 262-263, 2007-1062 (La.App. 1 Cir. 7/21/08).

Since the 1996 amendments to La. C.C. arts. 2323 and 2324, courts of appeal have split on the issue of whether La. C.C. arts. 2323 and 2324 apply to abolish solidary liability in redhibition cases. The First and Second Circuits have held that these articles apply to a redhibition suit.

---

[3] There are three main systems of comparative negligence, named after the states that first adopted them. They are the Mississippi, Georgia, and New Hampshire plans. Mississippi enacted a "pure" system in which the plaintiff can recover diminished damages even though at fault himself as long as the defendant has some negligence. Twelve states including Louisiana have adopted a "pure" comparative fault system. Comparative Fault, § 1.11 Woods and Deere (3rd ed.1996).

*Petroleum Rental Tools, Inc. v. Hal Oil & Gas, Co., Inc.,* 95,1820 (La.App. 1 Cir. 8/22/97), 701 So.2d 213, *writ dismissed,* 97-3088 (La.2/10/98), 706 So.2d 982; *Hampton v. Cappaert Manufactured Housing, Inc.,* 36,773 (La.App. 2 Cir. 1/29/03), 839 So.2d 363. On the other hand, the Fourth Circuit has held that La. C.C. art. 2323 applies only to "actions based in tort" and that a redhibition suit is a contractual action, not a tort action. *Touro Infirmary v. Sizeler Architects,* 04-0634 (La.App. 4 Cir. 3/23/05), 900 So.2d 200, 205, *writs denied,* 04-2114 (La.5/6/05), 901 So.2d 1093 and 05-1315 (La.1/13/06), 920 So.2d 232.[4]

With the 1996 amendments to Articles 2323 and 2324(B), the legislature has effected a total shift in tort policy. Prior to the enactment of the amendments, the policy behind Louisiana's tort law was ensuring that innocent victims received full compensation for their injuries. Now, Louisiana's policy is that each tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person. With the advent of this new policy, the right of contribution among solidary tortfeasors also disappeared since it is no longer necessary in light of the abolishment of solidarity. The legislature has struck a new balance in favor of known, present and solvent tortfeasors instead of the previous priority that fully compensated injured victims.

In the instant case, Bruks does not have a cause of action for contribution. Contribution is allowed only among tortfeasors who are solidarily liable. *Narcise v. Illinois Cent. Gulf R.R. Co.,* 427 So.2d 1192 (La.1983); *see also American Grain Ass'n. v. Canfield, Burch & Mancuso,* 471 So.2d 1125 (La.App. 3 Cir.1985). Noncontractual solidary liability was abolished in 1996, except

---

[4] *Aucoin v. Southern Quality Homes, LLC,* 984 So.2d 685, 693, 2007-1014 (La.,2008)

as to those tortfeasors who conspire to cause intentional or willful harm. La.Civ.Code art. 2324. This is not a case where fraudulent conduct or intentional errors are alleged against Mid-South, therefore Bruks has no cause of action for contribution. Thus, Mid-South is entitled to judgment dismissing Bruks's contribution claim.

Bruks's third-party complaint also seeks indemnity from Mid-South in the event it is found liable for any of plaintiffs' damages. There is no indemnity contract between Bruks and Mid-South, however Bruks asserts that there is an implied indemnity in its favor. In making this argument, Bruks relies on *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La.1999). In *Nassif*, the home owner brought an action in redhibition to recover damages for a defective foundation against the seller, Sunrise Homes, Inc., and the real estate developer who built the house. The builder/developer filed a third-party demand against the engineering firm that designed the foundation of the house for full indemnity for any and all sums for which the builder/developer was held liable to the home owner on the main demand. The sole issue for review in *Nassif* was whether a defendant, whose liability to a plaintiff for the plaintiff's attorneys fees resulted from the actual fault of another, could recover, by way of indemnity, the amount of such attorneys fees from the party actually at fault, given the general rule that attorneys fees are not allowed except where authorized by statute or contract.

In *Nassif*, the home owner brought an action in redhibition against the builder/developer to recover for a foundation defect, and the builder/developer filed a third-party demand against the engineering firm that negligently designed the foundation of the house, for "full indemnity" for all sums for which the builder/developer was deemed "technically liable." *Nassif*, 98-3193 at p. 2, 739 So.2d at 185. On appeal, the Supreme Court affirmed the award of full indemnification to the home

7

owner, but reversed the appellate court's deletion of attorneys fees that the trial court had included

in the judgment in favor of the builder/developer and against the negligent engineer. In doing so,

the Supreme Court reasoned as follows:

> "[W]e conclude that the equitable principle of restitution applies in an action for
> indemnity to allow a defendant who is only technically or constructively liable for
> a plaintiff's loss to recover from the party actually at fault the attorney fees it was
> compelled to pay the plaintiff, even in the absence of a statute or contract of
> indemnification. This measure of relief is in accordance with the long standing
> principle that "[i]ndemnity shifts the entire loss from a tortfeasor only technically
> or constructively at fault to one primarily responsible for the act that caused the
> damage." (Citation omitted).

> *Nassif,* 98-3193 at pp. 6-7, 739 So.2d at 18-188.[5]

The Court in *Nassif* explicitly found that "[a]n implied contract of indemnity arises only

where the liability of the person seeking indemnification is solely constructive or derivative and

only against one who, because of his act, has caused such constructive liability to be imposed."

The record reflects that Martco has sought to hold Bruks liable under claims of redhibition,

breach of contract, and detrimental reliance. An implied contract of indemnity only arises when the

indemnitee's liability is solely vicarious, constructive, or derivative. *Hesse v. Champ Serv. Line,* 828

So.2d 687, 690 (La.Ct.App.2002). Indemnity, which is based in the concept of unjust enrichment,

may lie when one party discharges a liability, which another rightfully should have assumed. *Nassif*

*v. Sunrise Homes, Inc.,* 98-3193, pp. 2-3 (La.6/29/99), 739 So.2d 183, 185; *Mayo v. Benson*

*Chevrolet Co.,* 97-1121, p. 2 (La.App. 5th Cir.8/25/98), 717, 4 So.2d 1247, 1248. The obligation

---

[5] Ciliberti v. Mistretta 879 So.2d 789, 793-794, 2003-1559 (La.App. 1 Cir. 5/14/04),), (La.App. 1 Cir.,2004)

to indemnify may be express, as in a contractual provision, or may be implied in law, under a tort or quasi-contract theory, even in the absence of an indemnity agreement. *Bienville Parish Police Jury v. United States Postal Service,* 8 F.Supp.2d 563, 569 (W.D.La.4/29/98); *Nassif,* 98-3193 at 3, 739 So.2d at 185. An implied contract of indemnity, or tort indemnity as it applies in this case, arises only when the fault of the person seeking indemnification is solely constructive or derivative, from failure or omission to perform some legal duty, and may only be had against one who, because of his act, has caused such constructive liability to be imposed. *Nassif,* 98-3193 at 3, 739 So.2d at 185; *see also Mayo,* 97-1121 at 2, 717 So.2d at 1248. As such, a party who is actually negligent or actually at fault cannot recover tort indemnity. *Hamway v. Braud,* 838 So.2d 803, 806, 2001-2364 (La.App. 1 Cir.,2002); *Sellers v. Seligman,* 463 So.2d 697, 700 (La.App. 4th Cir.), *writ denied,* 464 So.2d 1379 (La.1985).

Under Louisiana law, derivative liability arises when a party without fault is held liable to a plaintiff for the conduct of a third-party. Derivative liability is viable only in circumstances where the main defendant could be liable to the main plaintiff for the third-party defendant's conduct, such as the employer-employee or contractor-subcontractor relationships. Bruks' allegations that Mid-South, under contract to Martco, prepared faulty or late designs, and that such faulty or late designs detrimentally impacted Bruks' production of equipment, is not a viable derivative indemnity claim under Louisiana law. As noted by Mid-South, in order for Bruks to have true derivative liability, Bruks would have to be directly liable to the original plaintiff for the defective designs themselves. It is not sufficient that Bruks merely be damaged by the defective designs – Bruks must, in fact, be liable to the original plaintiff for those allegedly defective designs.

Bruks owed no duty to Martco regarding the designs that Martco contracted directly with

9

Mid-South to provide, and Bruks can have no liability to Martco for any fault of Mid-South in the preparation of those designs. Mid-South has no relationship with Bruks that could ever cause Bruks to be responsible to the original plaintiff, Martco, for damages caused solely by Mid-South. Mid-South was not an employee of Bruks, Mid-South did not perform ultra-hazardous activities rendering Bruks liable, and Mid-South was not a subcontractor to Bruks. In the absence of any potential derivative liability for Bruks for the fault of Mid-South, Bruks cannot maintain an indemnity claim under Louisiana law.

Bruks claims that it is not at fault for plaintiff's injuries; thus, it appears that what Bruks hopes to gain from its indemnity claim is an assurance that it will not have to pay for the fault of another, namely Mid-South. However, Bruks need not be concerned: because no one has pled plaintiffs' injuries were the result of a conspiracy between it and Mid-South, under Civil Code article 2324, Bruks will never be required to pay an amount in damages that is not proportionate to its own actual negligence. Thus, there is simply no need for the indemnity Bruks seeks and, absent any contractual indemnity agreement, Bruks's indemnity claim will also be dismissed.[6]

Merely alleging possible liability on the face of a complaint is not sufficient. As provided in the United States Supreme Court case of *Bell Atlantic v. Twombly*, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

---

[6] *Robinson v. Louisiana Dock Co., LLC*, L 1175114, 1 -2 (E.D.La.,2001)

10

doubtful in fact)." *Id.* at 555-56. Bruks' Third-Party Complaint provides no basis on which derivative liability could arguably be supported.   Bruks has failed to meet the threshold requirements of pleading  a viable legal indemnity claim.

Bruks also argues that this Court should not grant Mid-South's motion at this "early stage in the litigation. . . ."[7]   A review of the record indicates that this is not an "early stage of the litigation." Martco initiated this lawsuit against Bruks in October 2007, over two and a half years ago. Bruks, thereafter, filed the third-party demand against Mid-South in September 2008, over a year and a half ago. Until November 2009, this matter was set for trial on March 22, 2010, and was then reset for trial in September 2010, which is less than six months away.  Accordingly, additional time for Bruks to attempt to develop a claim is not warranted.

**Conclusion**

Mid-South's motion to dismiss the third-party claims filed herein against it by Bruks will be granted.

Lake Charles, Louisiana, this ____ day of May, 2010.

PATRICIA MINALDI<br>UNITED STATES DISTRICT COURT

---

[7]  Opposition Memorandum at p. 3 and 7.

11